UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br> v. <br><br> EARL SCHEIB, INC., *et al.*, <br><br> Defendants. | Civil No. 11-CV-0788-GPC (WVG) <br><br> ORDER RULING ON DEFENDANT KELLY CAPITAL, LLC'S OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS NOS. 23, 24, 61, 62, AND 73 |

On January 18, 2013, this Court held a telephonic Discovery Conference with counsel for all parties. Ms. Shivani Nanda participated on behalf of Plaintiff Connecticut General Life Insurance Company ("Plaintiff"), Mr. Christopher Rowlett participated on behalf of Defendant Kelly Capital, LLC ("Defendant"), and Ms. Cynthia Marks participated on behalf of Defendant Earl Scheib, Inc ("Earl Scheib"). The discovery dispute involved Defendant's supplemental responses to Requests for Production of Documents ("RFPs") propounded by Plaintiff.

During the Discovery Conference, the Court issued rulings on many of Defendant's objections to the RFPs. However, the Court reserved its ruling on five of the RFPs, which request Defendant's internal communications, financial statements, and documents relating to the extent to which Defendant participated or conferred with Defendant Earl Scheib regarding its budgets, capital expenditures, and loans. Defendant objects that the cost of production in response to these discovery requests, when considered against the claim itself, renders production unduly burdensome. (Doc. No. 40 at 2.) The Court reserved its ruling on these RFPs pending receipt of documentation to support Defendant's objections.

Defense counsel represented during the Discovery Conference, that to search and produce emails in response to these five RFPs would cost approximately $120,000, which is the amount at stake in this litigation.[1] The Court ordered Defendant to produce documentation to reflect the cost breakdown associated with searching for and producing responsive documents, along with cost estimates for alternative searches, such as the cost breakdown associated with producing only relevant emails from witnesses to be deposed. (Doc. No. 40 at 2.)

On January 25, 2013, in compliance with this Court's Order, Defendant filed Supplemental Briefing Regarding Cost of E-Mail Production. (Doc. No. 41.) In its brief, Defendant noted that an outside vendor must be hired to perform the searches for electronic discovery, and stated that it would cost over $121,000 to index, filter, and process the estimated 219 gigabytes. Id. at 2-3. Defendant noted that this estimate does not include any attorney review time, or time spent coordinating the production. Id. at 3. Defendant also explained that producing relevant emails from only those individuals Plaintiff has noticed for deposition would cost over $30,000. Id. Defendant filed two Statements of Work ("SOW") from a vendor with details of the cost estimates. (Doc. No. 41; Exhs. A, B.) On January 28, 2013, Defendant filed an Amended Declaration in Support of Defendant's Supplemental Briefing. (Doc. No. 42.)

Having reviewed Plaintiff's RFPs, Defendant's Supplemental Responses, Defendant's Supplemental Briefing, and hearing arguments asserted by counsel for both parties during the January 18, 2013, Discovery Conference, the Court hereby SUSTAINS Defendant's objections to RFP Numbers 23, 24, 61, 62, and 73.

## I. LEGAL STANDARD

### A. FEDERAL RULE OF CIVIL PROCEDURE 26

Under Federal Rule of Civil Procedure 26(b)(1), a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit. Fed.R.Civ.P. 26(b)(2)(C); Brady v. Grendene USA, Inc., 2012 WL 6086881, 2 (S.D. Cal. Dec. 6, 2012); Henderson v. Holiday CVS, L.L.C., 269 F.R.D. 682, 686 (S.D. Fla. 2010). The party resisting discovery has a heavy burden of showing why the requested discovery

---

[1] The total size of Plaintiff's claim is $119,515.49. (Doc. No. 41 at 3.)

should not be permitted. Brady, 2012 WL 6086881, 2. However, once the resisting party meets its burden, the burden shifts to the requesting party to show that the information is relevant and necessary. Id; Henderson, 269 F.R.D. at 686 (citing Gober v. City of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000); see also Hunter's Ridge Golf Co. Inc. v. Georgia-Pacific Corp., 233 F.R.D. 678, 680 (M.D. Fla. 2006).)

In determining whether the burden of complying with an electronic discovery request outweighs the likely benefit of the proposed discovery, the first inquiry should be to determine the benefits to be derived from the discovery, particularly the likelihood that the discovery will uncover relevant information, and the potential value of that information in resolving the issues in the case. Semsroth v. City of Witchita, 239 F.R.D. 630, 638 (D. Kan. 2006). The benefits should then be compared to the cost burden resulting from the discovery, particularly the total cost of the production compared to the amount in controversy, and the total cost of production compared to the resources available to each party. Id (citing Fed.R.Civ.P. 26(b)(2)(B).)

Further, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." Takacs v. Union County, 2009 WL 3048471, 1 (D.N.J. 2009). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Id.

### B. COST-SHIFTING

Cost-shifting may be appropriate when electronic documents are "inaccessible." Zublake v. UBS Warburg LLC, et al, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (hereinafter Zublake I); see also OpenTV v. Liberate Technologies, 219 F.R.D. 474, 476 (N.D. Cal. 2003). According to the Zublake cases, shifting the cost of production from the producing party to the requesting party should be considered only when data is sought from an inaccessible format. OpenTV, 219 F.R.D. at 476 (citing Zublake v. UBS Warburg LLC, et al., 216 F.R.D. 280, 284 (S.D.N.Y. 2003). "In Zublake I, the court suggested that, 'in the world of

1 electronic data...any data that is retained in a machine readable format is typically accessible."' OpenTV,
2 219 F.R.D. at 477 (quoting Zublake I, 217 F.R.D. at 318.)

3      In OpenTV, the court considered which party should bear the cost of extracting source code from
4 the responding party's database. OpenTV, 219 F.R.D. at 475. The responding party made all documents
5 available to the requesting party pursuant to Rule 34, but the requesting party argued that the responding
6 party was shifting the cost of production to them. Id. While the source code at issue in the OpenTV case
7 was not "backed up" in the manner of the emails at issue in the Zublake cases, the court determined that it
8 was "similarly expensive and time consuming to make it available in a useable form for discovery." Id. at
9 477. The court noted that "[a]ccessibility turns largely on the expense of the production," and determined
10 that 125-150 hours of contracting work required to produce the documents was unduly burdensome and
11 potentially expensive, and thus contrary to Rule 26. Id. at 476-477. Thus, the court found that the
12 "requested electronic data was stored in an inaccessible format for the purposes of discovery." Id.

13      The OpenTV court stated that, "[a] responding party should not be required to pay for the production
14 of inaccessible electronic data if the cost of such production is significantly disproportionate to the value
15 of the case." Id. at 478. The court explained that, "disproportionately expensive discovery to the value of
16 the case warrants cost-shifting." Id. However, the court found that the electronic discovery expenses
17 "pale[d] in comparison" to the overall amount in controversy. OpenTV, 219 F.R.D. at 478. In addition, the
18 court noted that, with respect to the resources available to each party, both parties were corporations with
19 the financial ability to fund infringement litigation. Id. The court ultimately ordered the parties to split the
20 cost of production. Id. at 479.

21      Applying the rationale used in OpenTV, the Eastern District of California recently ordered a
22 requesting party to share costs with the responding party in the production of email communication that cost
23 $54,000. Couch v. Wan, 2011 WL 2551546 (E.D. Cal. June 24, 2011); reconsideration denied, 2011 WL
24 2971118 (E.D. Cal. July 20, 2011). The court concluded that the discovery requests imposed a burden on
25 the responding party that was sufficient to warrant cost-sharing. Id. at 4.
26 //
27 //
28

## II. RULING

Defendant claims, and has provided documentation to support, that producing 219 gigabytes from nineteen different email accounts would cost more than $121,000.  (See Doc. No. 41.)  The Court finds the SOWs submitted by Defendant to be persuasive, credible, and reliable considering the work to be done to search and extract any relevant emails.  The cost estimate certainly suggests that the email documentation is unduly burdensome under Rule 26 standards.  Further, the tasks listed on the SOWs, such as data extraction and filtering, tiff conversion/export, and Optical Character Recognition for non-searchable files, among other tasks, along with the significant expense required to complete the search and production of the emails, suggests that this data is inaccessible under the OpenTV analysis for discovery purposes.

Moreover, Plaintiff already has, or soon will, receive a significant amount of relevant financial data from Defendant.  Plaintiff also has the opportunity to depose Defendant's employees whose emails they request to be produced.  After conducting a cost-benefit analysis, it is clear that the cost of searching and producing documents responsive to RFP Numbers 23, 24, 61, 62, and 73, far exceeds what is at stake in the instant litigation, and therefore, the Court concludes that the requests are unduly burdensome.

Defendant has met its burden under Rule 26 to show that the requested discovery should not be permitted.  Therefore, the burden has shifted back to Plaintiff to show that the information is relevant and necessary.  Plaintiff has already explained to the Court its reasons for requesting the information, including relevancy to the claims.  However, the Court finds that the expense associated with responding to these five RFPs is too great when weighed against what is at stake in the litigation.

Although some of the information Plaintiff requests may be helpful, the cost-benefit analysis does not justify spending that amount of money on these five RFPs, and weighs heavily in favor of sustaining Defendant's objections.  However, the Court does recognize that there may be some relevant information in the requested discovery.  Therefore, if Plaintiff believes that this information is important to its case, then Plaintiff can perform its own cost-benefit analysis and determine whether it wants to fund the discovery.  The Court will not order Defendant to absorb the incredible expense associated with responding to these five RFPs, especially when Defendant has been working to produce documents and information in response to Plaintiff's various other discovery requests.

### III. CONCLUSION

For the reasons set forth above, the Court hereby SUSTAINS Defendant's objections to RFP Numbers 23, 24, 61, 62, and 73. Defendant does not have to produce documents in response to these RFPs. IT IS SO ORDERED.

DATED: February 6, 2013

_____
Hon. William V. Gallo
U.S. Magistrate Judge